RECORD NO. 11-5159

In The

# United States Court of Appeals
### For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee*,

**v.**

## SARENA A. MOBLEY,

*Defendant – Appellant*.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
AT CHARLOTTE**

――――――――――

**BRIEF OF APPELLANT**

――――――――――

Carol Ann Bauer
ATTORNEY AT LAW
Post Office Box 3872
Morganton, North Carolina  28680
(828) 430-9850

*Counsel for Appellant*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    Discussion #1  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    Discussion #2  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

i

## TABLE OF AUTHORITIES

Page(s)

CASES

Anders v. California,
        386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967) . . . . . . . . 1, 9, 10, 22

Blackledge v. Allison,
        431 U.S. 63, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977) . . . . . . . . . . . . . . . . 12

Fields v. Attorney Gen. of Md.,
        956 F.2d 1290 (4th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Hill v. Lockhart,
        474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) . . . . . . . . . . . . . . . . 12

Hooper v. Garraghty,
        845 F.2d 471 (4th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

Strickland v. Washington,
        466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) . . . . . . . . . . . 11, 18

United States v. DeFusco,
        949 F.2d 114 (4th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. Maddox,
        48 F.3d 791 (4th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

United States v. Martinez,
        136 F.3d 972 (4th Cir. 1998) cert. denied,
        524 U.S. 960, 118 S. Ct. 2385, 141 L. Ed. 2d 751 (1998) . . . . . . . . . . . . . 11

United States v. Wade,
        504 U.S. 181, 112 S. Ct. 1840, 118 L. Ed. 2d 524 (1992) . . . . . . . . . . . . . 19

United States v. Wallace,
    22 F.3d 84 (4th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

United States v. White,
    366 F.3d 291 (4th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## STATUTES

18 U.S.C. § 371 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 1344 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 1956(a)(1)(B)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 1956(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3742(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## RULE

Fed. R. Crim. P. 11(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## GUIDELINES

U.S.S.G. § 3E1.1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

U.S.S.G. § 3E1.1(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

U.S.S.G. § 5K1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

## STATEMENT OF SUBJECT MATTER AND
## APPELLATE JURISDICTION

Subject Matter Jurisdiction was vested in the United States District Court

for the Western District of North Carolina pursuant to 18 U.S.C. § 371, 18 U.S.C.

§ 1344, 18 U.S.C. § 1956(h), and 18 U.S.C. § 1956(a)(1)(B)(i).

Appellate Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1291

and 18 U.S.C. § 3742(a)(1) in that the subject of this appeal is a final decision of a

district court and in violation of the law.

The Judgment in a Criminal Case was filed on December 5, 2011.  Notice of

Appeal was filed on December 5, 2011.

## STATEMENT OF THE ISSUES

After a review pursuant to Anders v. California, 386 U.S. 738, 87 S. Ct.

1396, 18 L. Ed. 2d 493 (1967) –

1.  Whether Ms. Mobley was subjected to ineffective assistance of counsel

at her Rule 11 Hearing in that she  neither knowingly nor voluntarily entered into

the Plea Agreement.

2.  Whether Ms. Mobley was subjected to prosecutorial misconduct when

the government declined to motion for a downward departure from the applicable

sentencing guideline based on her substantial assistance.

## STATEMENT OF THE CASE

The Defendant/Appellant, Sarena A. Mobley, was indicted on June 15, 2010 in a ten-defendant Bill of Indictment related to mortgage fraud, bank fraud, money laundering, and concealment of money laundering conspiracies in a thirty-count Bill of Indictment.

In a Plea Agreement filed on January 28, 2011, Ms. Mobley agreed to plead guilty to Count One (conspiracy to commit mortgage fraud) of the Bill of Indictment.

On November 29, 2011, the District Court sentenced Ms. Mobley to a thirty-three month term of imprisonment for Count One. Pursuant to the Plea Agreement, Counts Four, Five, Fifteen, and Seventeen of the Bill of Indictment were dismissed as to Ms. Mobley. This appeal follows the final judgment.

## STATEMENT OF THE FACTS

According to the factual basis in the revised final draft of the Presentence Investigation Report (June 15, 2011), Ms. Mobley was a resident of California who was a part-time flight attendant and actress. She was recruited by a co-defendant to be a buyer of an expensive house in Waxhaw, North Carolina, with an inflated purchase price of $1,500,000.00 for a hidden $200,000.00 kickback. Ms. Mobley reported to a co-defendant that she had previously purchased a house

in Detroit, Michigan, and received about $10,000.00 to $20,000.00 in return for being a buyer.

Ms. Mobley and a co-defendant loan officer discussed that they could not report her true employment situation and still obtain a $1.47 million loan for the Waxhaw house. For purposes of the loan application, Ms. Mobley had another co-defendant, Mr. Carr, falsely report that she was employed by "Computer Finance Services" which was "a non-functional entity." She faxed a copy of Computer Finance Services's California seller's permit during the loan process to show that the company was legitimate although Mr. Carr reported that he and the company were "a bogus employer." Ms. Mobley was to pay Mr. Carr a $35,000.00 kickback out of her $200,000.00. However, she later reported to Mr. Carr that she only received an $80,000.00 to $90,000.00 kickback and could only pay him $10,000.00.

After a co-defendant told Ms. Mobley that she needed to show more income on her bank statements, Ms. Mobley was referred to a person who could provide altered documents. The altered bank statements were faxed from Ms. Mobley's home fax machine to the co-defendant for the loan application.

Ms. Mobley signed the loan application which stated that the house was to be her primary residence although she told other co-defendants that she did not intend to live there. While the loan application was pending, Ms. Mobley

discussed the possibility of doing more such deals for additional kickbacks, but any future deals did not happen.

As part of the offense conduct, it is reported that Ms. Mobley recruited another California resident, who worked with the mentally and physically handicapped, to purchase another Waxhaw house for the inflated price of $1,498,500.00 with a kickback of $247,500.00. The house was later foreclosed on and resold for only $585,000.00.

Ms. Mobley did make about $100,000.00 in loan payments before stopping the payments. Prior to any foreclosure on the property, she arranged a short sale for $775,000.00. However, this amount was reportedly more than $700,000.00 less than the inflated purchase price.

In both the Draft Report (April 22, 2011) and the Final Report (May 16, 2011) of the Presentence Investigation Report, Ms. Mobley had received a three-level adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b). On the same day that the Presentence Investigation report became final, Ms. Mobley filed objections challenging the factual basis. In the Revised Final Report (June 15, 2011), Ms. Mobley did not receive a three-level adjustment for acceptance of responsibility.

In pertinent part, the Objections filed on May 16, 2011, claimed that Ms. Mobley was the victim of stolen identity for "the entire scheme, including the

4

falsification of her income and place of employment on the mortgage appication [*sic*]", never arranged for a hidden kickback of $35,000.00 with her co-defendant, did not purchase the property for a hidden kickback of $200,000.00, made payments on the Detroit house for at least two years and received about $5,000.00 on the sale, denied she stated that she had considered burning the Detroit house for the insurance money, denied that she was interested in purchasing another house in the scheme for a cash kickback, did not know that the purchase price for the subject property had been inflated,  listed her true employer and income information on her loan application, and had no knowledge of altered bank statements being faxed from her home fax machine.

Prior to the production of the Presentence Investigation Reports and Ms. Mobley's objections thereto, she had appeared at a Rule 11 Hearing on January 31, 2011 during which she pled guilty to Count One (Mortgage Fraud Conspiracy) of the Bill of Indictment.  At the hearing, Ms. Mobley was represented by three attorneys – a CJA appointed attorney, a retained attorney from California appearing *pro hac vice*, and a locally retained attorney.

During the Rule 11 Hearing, Ms. Mobley told the Court that she was taking her "normal medications."  Both Ms. Mobley and one of her retained attorneys informed the Court that she was taking antidepressant medications and thinking clearly with the ability to understand the proceedings.

Her CJA appointed counsel had attempted to withdraw prior to the Rule 11 Hearing in a Motion to Withdraw as Counsel filed on January 18, 2011 citing that Ms. Mobley had retained other counsel and that he had been discharged.  During the January 21, 2011 Status of Counsel hearing, the Court denied the motion to withdraw since the case was scheduled for trial on the docket beginning February 7, 2011.

On July 20, 2011, Ms. Mobley's CJA appointed attorney filed a second Motion to Withdraw as Counsel.  He cited that since the entry of her guilty plea, Ms. Mobley had "expressed reservations" and that his "continued representation in this matter is unwarranted and an unnecessary governmental expenditure" since her retained counsel had had time to learn about the case and they were no longer on the eve of a jury trial.  Given Ms. Mobley's reservations about her guilty plea, the Court denied the motion finding that it would be "prudent to retain local court-appointed counsel at this time."

On August 15, 2011, Ms. Mobley filed a *pro se* motion to withdraw her guilty plea.  In the motion and supporting documentation, Ms. Mobley stated that she had been taking prescription medication for "depression, pain and anxiety related issues" which "affected [her] mental capacity and deprived [her] of the ability to enter into a knowingly and voluntary plea at the time of the Rule 11 Hearing."  Ms. Mobley stated that she had "continually professed [her] innocence

in this matter" and that she was "a victim of the crime that was perpetrated by the other co-defendants in this matter."

The Court denied Ms. Mobley's motion to withdraw her guilty plea in a Memorandum and Order (filed August 30, 2011) which found no basis for the withdrawal of the plea. Ms. Mobley's retained counsel filed a Motion for Reconsideration of Motion to Withdraw Guilty Plea, but the motion was again denied in an Order filed on October 7, 2011.

On November 15, 2011, one of Ms. Mobley's retained counsel filed a Motion to Withdraw as Counsel for Defendant. Counsel alleged that Ms. Mobley had "threatened to kill defense counsel if he did anything to screw up the preparation for her sentencing" and that he was "afraid for his life and cannot continue to represent Defendant under these circumstances." The motion was denied at the commencement of Ms. Mobley's sentencing hearing on November 29, 2011.

At her November 29, 2011 sentencing hearing, Ms. Mobley was again represented by all three defense attorneys. She declared that – "I am an innocent woman standing before you." The Court found her guilty plea had been knowingly and voluntarily made and reaffirmed the plea.

The Court proceeded to the factual basis. Ms. Mobley objected to the factual basis in the Presentence Investigation Report. The government presented

a factual basis to the Court using exhibits of documents. Ms. Mobley's counsels conferred and decided to stand by the objections previously filed to the Presentence Investigation Report and to make additional objections. Ms. Mobley declined to testify, but the Court allowed her to make statements. Ms. Mobley admitted that most of the money she received went to house payments and she was "shiested" out of the last $30,000.00. She said the $200,000.00 which was given to her was not a kickback. The money was to be used to make house payments until the house was re-sold then she expected to get a split from the equity. Ms. Mobley stated she "had no idea that that was illegal", and she had seen it done on TV as a "flip-your-house." She denied that her signature was on many of the documents and contended that it appeared her signature had been traced or cut and pasted.

Ms. Mobley told the Court that she never got to tell her side of the story to the Grand Jury. She believed that the government deliberately delayed serving her with a target letter to prevent her from testifying before the grand jury.

The Court agreed to take Ms. Mobley's statements as her version of the factual basis. Considering the facts in the Presentence Investigation Report in addition to the facts presented in court during the hearing, the Court found that a factual basis existed for the entry of the plea and entered a judgment of guilty.

Ms. Mobley's CJA counsel told the Court that a retained attorney had personally reviewed the Presentence Investigation Report with her and that all three counsel had a four-way conference call with her to go over objections. The Court heard Ms. Mobley's written objections to the Presentence Investigation Report. The Court overruled the objections but stated that the objections would be taken "into consideration as the defendant's version of the facts on the factual basis."

The Court found an Offense Level of 20, a Criminal History Category of I with a Guideline Sentencing range of 33 months to 41 months. The government declined to move for any departures or variances. The defense argued that the Court should consider a reduced sentence based on aberrant behavior and a mitigated role.

After considering the 3553 factors, the Court found that a sentence within the Guideline range would be appropriate since there would be no acceptance of responsibility. The Court sentenced Ms. Mobley at the bottom of the Guideline range to be imprisoned for 33 months.

## SUMMARY OF ARGUMENT

After a review pursuant to Anders v. California, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), (1) whether Ms. Mobley was subjected to ineffective assistance of counsel at her Rule 11 Hearing in that she neither

knowingly nor voluntarily entered into the Plea Agreement since she was coerced into doing so by her attorneys who knew she was impaired by prescription medication, and (2) whether Ms. Mobley was subjected to prosecutorial misconduct when the government declined to motion for a downward departure from the applicable sentencing guideline based on her willingness to offer substantial assistance.  With the help of the Defendant/Appellant, the undersigned has identified the arguable issues on appeal as stated above and submits the following to direct the Court's attention to those issues in the record.

ARGUMENT

Standard of Review

The standard of review for an Anders submission is a *de novo* review of the entire record and all pertinent documents to determine whether an appeal is wholly frivolous. Anders v. California, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

Discussion #1

The Appellant contends that she was subjected to ineffective assistance of counsel from all of her attorneys since they coerced her into a guilty plea at her Rule 11 Hearing while knowing that she was under the influence of prescription medication.  Therefore,  the plea was neither knowingly nor voluntarily made before the Court.

An ineffective assistance of counsel claim may be brought on direct appeal "if and only if it conclusively appears from the record that his counsel did not provide effective assistance." United States v. Martinez, 136 F.3d 972, 979-980 (4th Cir. 1998) cert. denied, 524 U.S. 960, 141 L. Ed. 2d 751, 118 S. Ct. 2385 (1998).  A two-prong test has been established for claims of ineffective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).   An appellant must first show that his counsel's performance fell below "an objective standard of reasonableness." Id., 466 U.S. at 687-691. Second, an appellant must show by a "reasonable probability," which is defined as "a probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., 466 U.S. at 694.  If the claim of ineffective assistance of counsel is made after a Rule 11 hearing in which the defendant was sworn under oath and stated that he or she was satisfied with the performance of the attorney, then it must be proven by "clear and convincing evidence to the contrary" that the defendant was actually dissatisfied with the performance of counsel.  Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1299 (4th Cir. 1992).  Additionally, after the entry of a guilty plea, the prejudice prong is modified and "a defendant 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Hooper v.

Garraghty, 845 F.2d 471, 475 (4th Cir. 1988) *quoting* Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203, 210 (1985).

"Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." Fed. R. Crim. P. 11(b)(2) (2011). Statements made by a defendant during a Rule 11 Hearing are "strong evidence of the voluntariness of his plea." United States v. DeFusco, 949 F.2d 114, 119 (4th Cir. 1991). Such statements "carry a strong presumption of verity." United States v. White, 366 F.3d 291, 295 (4th Cir. 2004) *quoting* Blackledge v. Allison, 431 U.S. 63, 74, 97 S. Ct. 1621, 74, 52 L. Ed. 2d 136, 147 (1977). Because of the presumption of verity, statements made by the defendant during a Rule 11 Hearing "present 'a formidable barrier in any subsequent collateral proceedings.'" White, 366 F.3d at 295-296 *quoting* Blackledge, 431 U.S. at 74, 97 S. Ct. at 74, 52 L. Ed. 2d at 147.

All three of Ms. Mobley's attorneys were present during her Rule 11 Hearing on January 31, 2011. At the commencement of the hearing, one of her attorneys told the Court that they were having issues with the factual basis for the plea. The Court expressed concern since the trial was scheduled for February 10, 2011, and Ms. Mobley was the "last defendant" in the case. However, the Court stated that he would not "meddle" in the conversations with counsel and that his

12

sole job was to be sure that any plea would be "entered knowingly and voluntarily." The Court recessed the proceedings and told the parties that he would be available all day if he was needed.

On the same day, the parties returned to the courtroom "for further consideration" of Ms. Mobley's case. All three attorneys were still present and announced that Ms. Mobley was prepared to enter her plea.

After being sworn, Ms. Mobley answered the standard Rule 11 hearing inquiries. One of Ms. Mobley's retained attorneys told the Court that he was familiar with her antidepressant medications and that the medications did not interfere with her ability to understand the proceedings. Ms. Mobley agreed that her head was clear and that she understood she was entering a guilty plea which could not later be withdrawn. After the United States Attorney summarized the one count to which she was pleading, Ms. Mobely told the Court that she fully understood that count and the maximum punishment involved.

When the Court asked Ms. Mobley if she was guilty of the charges contained in count one, she paused before saying "yes". The Court stepped aside from the standard Rule 11 Inquiry questions and asked one of Ms. Mobley's attorneys whether additional time was needed for further discussion with her. The attorney told the Court that he believed that Ms. Mobley wanted to enter a plea of

guilty. In response to the Court's statement to her that she had "a choice to plead guilty or not guilty," Ms. Mobley said –

> Yes, but I know that they already have all these criminals lined up against me so I have no other choice. So I'm saying yes, I'm ready to go. I want to get it over with. My life is already ruined."

The Court proposed that they continue with the Rule 11 inquiry and that he would ask some additional questions at the end of the hearing to be sure that the parties were "all on the same page."

Pertinent among the waivers present in the Plea Agreement, which the Court reviewed with Ms. Mobley, were the appellate waivers. Due to the concessions made by the government in her Plea Agreement, Ms. Mobley agreed that she would have no ability to withdraw her guilty plea or challenge her conviction or sentence except on the grounds of ineffective assistance of counsel and/or prosecutorial misconduct.

Ms. Mobley confirmed to the Court that nobody had threatened, intimidated, or forced her into entering a plea of guilty. She told the Court that she was satisfied with the services of her attorneys and did not wish to tell the Court anything about their services.

The Court noted that Ms. Mobley had earlier seemed "somewhat hesitant" when she was asked about whether she was in fact guilty of the charge contained in count one. Based on that hesitancy, the Court asked Ms. Mobley some

additional questions to make the record clear about her intentions.  Pursuant to the

questioning of the Court, Ms. Mobley affirmatively responded that she understood

the charge of conspiracy to commit mortgage fraud contained in count one and had

been over that charge carefully with her lawyer.  She understood that the purpose

of the proceeding was to accept her guilty plea to the charge if the Court

determined that her plea was knowing and voluntary.  Ms. Mobley confirmed that

she had reviewed the charge and the maximum penalty in detail with her attorneys

in the "past weeks and months."  She had carefully reviewed the Plea Agreement

with her attorneys and believed that she understood it.  The Court told Ms. Mobley

that he understood "it's a big decision that you are making here and these things

are never easy" but wanted "the record to be clear that this is a knowing and

voluntary choice" by her. Ms. Mobley responded affirmatively.  The Court

explained to Ms. Mobley that being "sort of hesitant, nervous, unhappy,

disappointed" is one thing but "not wanting to do it is another thing entirely."  She

answered "yes" to confirm that she understood the difference.  Ms. Mobley again

said "yes" when the Court asked if she wanted him to accept her guilty plea.

Before the Rule 11 Hearing concluded, the Court asked one of her retained

attorneys if he had adequately discussed the matter with Ms. Mobley and whether

he reviewed the terms of the Plea Agreement to her satisfaction and whether he

was satisfied that she understood the terms and knew what she was doing.  The

attorney answered affirmatively.  Upon the Court's questioning, Ms. Mobley's other two attorneys said that they had nothing to add.

Approximately eight months later, on August 15, 2011, Ms. Mobley filed a *pro se* Motion to Withdraw Guilty Plea.  The basis of this motion was Ms. Mobley's contention that her medications affected her mental capacity and deprived her of the ability to enter into the plea knowingly and voluntarily.  Ms. Mobley proclaimed that she was an innocent victim of the crime "perpetrated by the other co-defendants in this matter."  The motion was denied.

At her November 29, 2011 sentencing hearing, Ms. Mobley appeared with her three attorneys.  She told the Court that she "was coerced, forced, strong armed and under heavy, heavy medication on January 31st when [she] was forced to plead guilty."  The Court told Ms. Mobley that the issue of the voluntariness of her plea had already been dealt with and that the Court had affirmed the decision denying her motion to withdraw her guilty plea.  Throughout her sentencing hearing, Ms. Mobley continued to contend that she was innocent and that her plea was the result of coercion by her attorneys who knew that she was mentally disabled by medication.

Ms. Mobley told the Court that she had insisted that her attorneys produce a transcript of the Rule 11 Hearing.  They did so, and she reviewed the transcript. She contended to the Court that the transcript was incomplete in that –

16

They never give the beginning part where I consistently say that I'm innocent, I'm innocent, I'm innocent. 'After all of this we are going to work this out for you. It's going to work out. Just take the guilty plea.' I reluctantly said, 'I'm guilty.'"

"The judge says, 'Are you saying you're guilty because you are, in fact, guilty or are you being forced?'"

"I said, 'I'm being forced.'"

"He made us go up into one of these little rooms right over here and had them, like I said, coerce me into going ahead and taking that guilty plea."

"I am an innocent woman standing before you."

The Court noted he had "already found that the magistrate judge's finding that the plea was knowingly and voluntarily made, that the defendant understood the charges, potential penalties and consequences of her plea, I've already found that those things found by the magistrate judge were true and have affirmed that, and have affirmed acceptance of plea of guilty at the Rule 11 hearing already, and I reaffirm that today."

Other than the statements by Ms. Mobley saying that her attorneys coerced and forced her into entering a plea of guilty at her Rule 11 hearing while she was on medications and not thinking clearly, nothing in the record supports this claim. The transcript of the Rule 11 hearing shows an intelligent and outspoken defendant who was not afraid to speak up for herself. She admitted that she was entering into the Plea Agreement rather than go to trial because  the government

17

had many witnesses against her.  Due to Ms. Mobley's rational decision making, appellate counsel does not believe that an argument can be made that she was the victim of ineffective assistance of counsel in the form of coercion.

To meet the first <u>Strickland</u> prong, an appellant must show that trial counsel's performance was below a professional objective standard of reasonableness.  Criminal defense attorneys are almost always assigned the task of explaining to criminal defendants that there is indeed evidence against them and that the government will use this evidence against them to gain a conviction and use any lack of co-operation against them at sentencing.  However, the defendant is always the person who must decide whether to go to trial or whether to enter into a plea agreement.  The purpose of a Rule 11 Hearing is to prevent coercion from any source – including defense counsel.  Although Ms. Mobley might not have been happy to admit guilt and be punished, the record shows that her attorneys would have simply been exercising good professional judgment if they had advised her to enter into a plea agreement.  Since trial counsel's performance did not fall below an objective standard of reasonableness, the second <u>Strickland</u> prong does not need to be discussed.

<u>Discussion #2</u>

The Appellant contends that she was subjected to prosecutorial misconduct when the United States Attorney declined to motion for a downward departure

from the applicable sentencing guideline based on her willingness to offer

substantial assistance.

"[U]pon motion of the government stating that the defendant has provided

substantial assistance in the investigation or prosecution of another person who

has committed an offense, the court may depart from the guidelines." U.S.S.G.

§ 5K1.1 (2011).  When the government has reserved the sole discretion to

determine whether or not substantial assistance has been rendered, the Court

cannot grant a downward departure without the motion of the government.  United

States v. Wallace, 22 F.3d 84, 87 (4th Cir. 1994).   At a sentencing hearing, when

the government does not have a binding obligation to motion for a downward

departure based on substantial assistance, the government's refusal to make such a

motion can only be challenged for unconstitutional motive or no rational

relationship to a legitimate objective of the government. United States v. Maddox,

48 F.3d 791, 795 (4th Cir. 1995) *citing* United States v. Wade, 504 U.S. 181, 112

S. Ct. 1840, 118 L. Ed. 2d 524 (1992).

Ms. Mobley's Plea Agreement (filed January 28, 2011) stated that "[i]f

requested by the United States, but only if so requested, the defendant agrees to

cooperate with the United States" and that "[n]othing in this agreement places any

obligation on the United States to seek the defendant's cooperation or assistance".

If such assistance had been requested by the government and if such assistance

19

had been rendered, the government reserved the right to determine in its sole discretion whether any such assistance had been substantial.

The government did not seek Ms. Mobley's assistance, and she did not provide the government with any assistance.  However, Ms. Mobley contends that this lack of assistance was due to misconduct by the government.

At her Rule 11 hearing, one of Ms. Mobley's attorneys told the Court that although it was not part of their agreement with the government, but she might be making a proffer based on "good faith" discussions with the government.

During her sentencing hearing, Ms. Mobley told the Court that her attorneys had promised her "a sit-down" with the United States Attorney.  The government noted that several of Ms. Mobley's co-defendants had been given 5K1.1 downward departures based on their assistance.

Ms. Mobley told the Court that she had written a letter to the mortgage company saying that she had been "defrauded."  She told the mortgage company that she was "in full cooperation with you and any other law enforcement that I have to be in cooperation with because I'm a victim, and I'm highly, highly upset that a person that I would call my friend would do this to me."  Ms. Mobley lamented that she "never got an opportunity to tell my story" like her co-defendants who testified before a grand jury.  When the FBI agents came to her house on September 13th, they gave her a target letter dated April 11th

20

which stated that her co-operation was needed by June 20th.   Ms. Mobley told the

Court – "They wanted me nowhere near a grand jury because they knew once I

told my story, it would have been no deal." She was the "victim" who "had the

guts to come forward to stop this from happening and you guys turned it all the

way around on me."

The United States Attorney admitted that there had been a delay in getting

the target letter to Ms. Mobley.  The letter had been delivered to the FBI in

California in June but not delivered to Ms. Mobley until August 21, 2009 and

counsel was appointed in September 2009.  Since she was not indicted until June

of 2010, the government's position was that "she had nine months or more in

which to get in contact with us to work it out and she chose not to do it."

Prosecutorial misconduct in declining to motion for a downward departure

for substantial assistance cannot be shown from the record.  Accordingly, Ms.

Mobley is requesting that this Court review her case to see if any error occurred

which would entitle her to some relief from any misconduct by the United States

Attorney.

<u>CONCLUSION</u>

Appellate Counsel respectfully requests that this Court conduct a full

examination of the record in Ms. Mobley's case to find possible prejudicial error

and to determine whether any justifiable issue had been overlooked by Counsel.

In accordance with Anders v. California, 386 U.S. 738, 87 S. Ct. 1386, 18 L. Ed. 2d 493 (1967), Counsel submits this brief in order to provide what assistance she can to the Court in conducting its review. Copies of the hearing transcripts and this brief will be sent to Ms. Mobley. Counsel respectfully requests that this Court allow Ms. Mobley time "to raise any points that [s]he chooses" in support of her appeal. Anders, 386 U.S. at 744, 87 S. Ct. at 1400, 18 L. Ed. 2d at 298.

Respectfully submitted this the 17th day of February, 2012.

/s/ Carol Ann Bauer
Carol Ann Bauer
North Carolina State Bar No. 21915
P.O. Box 3872
Morganton, NC 28680-3872
(828) 430-9850 - telephone
(828) 437-9397 - fax
cabauer@directus.net

*Counsel for Appellant*

<u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P.
      28.1(e)(2) or 32(a)(7)(B) because:

      [ X ] this brief contains [<u>5,069</u>] words, excluding the parts of the brief
      exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

      [    ] this brief uses a monospaced typeface and contains [*state the number
      of*] lines of text, excluding the parts of the brief exempted by Fed. R. App.
      P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.
      32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)
      because:

      [ X ] this brief has been prepared in a proportionally spaced typeface using
      [<u>Corel WordPerfect 12</u>] in [<u>14pt Times New Roman</u>]; *or*

      [    ] this brief has been prepared in a monospaced typeface using [*state
      name and version of word processing program*] with [*state number of
      characters per inch and name of type style*].


Dated: <u>February 17, 2012</u>          <u>/s/ Carol Ann Bauer</u>
                                         *Counsel for Appellant*

<u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 17th day of February, 2012, I caused this Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Amy E. Ray
> Office of the U.S. Attorney
> 100 Otis Street, Room 233
> Asheville, North Carolina  28801
> (828) 271-4661
>
> *Counsel for Appellee*

I also certify that on this 17th day of February, 2012, I caused the required number of bound copies of this Brief of Appellant to be hand-filed with the Clerk of this Court.

One bound copy of the same, will be served, via U.S. Mail, postage prepaid to:

> Sarena Mobley
> BOP # 59207-112
> FCI Marianna
> Federal Correctional Institution
> P.O. Box 7007
> Marianna, FL 32447
>
> *Appellant*

/s/ Carol Ann Bauer _____
*Counsel for Appellant*